PECK, Respondent, *v.* LEVINGER, Appellant.

**Contracts — Validity — Public Policy — Specific Performance — Certainty — Recoupment.**

A national bank having a mortgage on the property of a corporation, and holding the greater part of its capital stock, entered into a contract with L. to sell to him the entire property of the corporation, agreeing to foreclose the mortgage and to procure title for him thereunder. The bank delivered a part of the stock under the contract and L. made several payments thereunder. The bank assigned the mortgage to P. who knew of the contract. The bank having failed, a receiver was appointed. P. commenced an action to foreclose the mortgage, making L. and the receiver parties. L. answered, asking a specific performance of the contract, or that the amounts paid by him be applied in reduction of the mortgage debt. *Held,* 1, that the contract was void on the ground of public policy; 2, that it was not sufficiently definite and certain to be specifically enforced; 3, that the payments in part performance could not be used in recoupment of the mortgage debt.

(Argued and determined at the February Term, 1888.)

APPEAL from the district court, Minnehaha county; Hon.
C. S. PALMER, Judge.

This was an action by Porter P. Peck, plaintiff, against the
Sioux Falls Brewing Company, W. F. Furbeck, J. Leslie Thomp-
son as receiver of the First National Bank of Sioux Falls, Moriz
Levinger and others to foreclose a mortgage.

The complaint alleged the execution of the mortgage by the
Sioux Falls Brewing Company to W. F. Furbeck, cashier, for the
benefit of the bank, default in its conditions and its assignment
to the plaintiff. It also alleged the insolvency of the bank, the
appointment of the receiver, and that the defendant Levinger had,
or claimed some interest in the premises, which interest was sub-
ject to this mortgage, concluding with the ordinary foreclosure
prayer.

The note which the mortgage was given to secure would not
mature, except for the conditions contained in the mortgage, for
several years after the commencement of this action.

The defendant Levinger answered, admitting the formal execu-
tion of the note and mortgage and the appointment of the re-
ceiver, but alleged that the instruments were not given for any
actual present consideration received by the brewing company, but
for a prior debt of at least $13,000 less than this amount; that the
bank had no authority to assign the instruments to the plaintiff;
that he was not the holder thereof, or the real party in interest;
that at the time of their execution and assignment the plaintiff was
assistant cashier of the bank and knew of all the matters herein
set forth.

In the fourth part of the answer, the only other part material
to the questions here presented, the defendant alleged:

1. That he admits he has and claims an interest in the premises
described in the complaint, and in this behalf alleges that his in-
terest is not subject to any lien of said mortgage, or to any inter-
est of plaintiff whatever in said premises; and on the contrary, is
superior to and defeats all other interest or claim on the part of
the plaintiff to such premises, and that defendant is entitled to
said note and mortgage and all beneficial interest therein, and all
interest, estate and title acquired by foreclosure of the mortgage,
as is more fully hereinafter set forth; that on the 17th day of

February, 1886, a certain contract in writing was entered into by and between the said bank as party of the first part and this defendant as party of the second part, a copy of which is hereto attached and made a part hereof; that in pursuance of such contract, at the time of signing the same, the defendant did pay to the party of the first part the sum of $2,000 as therein stipulated, and then and there executed and delivered to the said party four certain promissory notes in the several sums, and becoming due according to the terms of said contract; that the sum of $2,000, due on March 3, 1886, the defendant, at the time it became due, tendered and offered to pay to said bank, and it refused such tender, and was not able to produce the notes given therefor by reason of an attachment or some disposal thereof, and defendant has at all times since been ready and willing to pay the same; that this defendant has since been compelled to pay, and has paid, for the benefit of said bank, the several sums of the other three notes above mentioned, as the same became due to the holders thereof, having been indorsed and transferred to third parties by said bank, in the aggregate amount of $5,000 or more; that in addition to the sums aforesaid, defendant, at the request of said first party, and the receiver in charge of said bank, and for its benefit under said contract, has paid and procured to be paid, in discharging said brewing company and its property from the debts and incumbrances which said bank assumed and undertook to pay, in order to give good title to all said property under said contract, and which it was unable and failed to pay or discharge, a large sum of money, in the aggregate, to-wit: $7,500; that the defendant has performed and tendered performance, and at all times has been ready and willing to perform all the agreements and obligations agreed to be kept and performed on his part according to the tenor and effect of said contract; but on the contrary, the said bank has at all times failed and refused and has become insolvent and unable to perform the same on its part, except to the extent of transferring to defendant at the time, one hundred and fifty-four shares of capital stock of said brewing company.

Defendant asked judgment that his interest in the premises be declared superior to that of the plaintiff; that he be entitled to all beneficial interest in said mortgage; that the bank by its re-

ceiver be required to specifically perform said contract, or account to defendant for all moneys received thereunder, and that the same be applied as a set-off or counter-claim in reduction of the mortgage debt; that the plaintiff's action be dismissed and that he have such other or further relief as would be just and equitable.

Copy of the contract: This contract made and entered into this 17th day of February, 1886, by and between the First National Bank of Sioux Falls, Dakota Territory, party of the first part, and Moriz Levinger, of the city aforesaid, party of the second part, witnesseth:

The party of the first part, in consideration of the promises and agreement hereinafter entered into on the part of the party of the second part hereby sells and transfers to the said party of the second part all the personal property, books and accounts, and all property outside the city of Sioux Falls, now belonging to the Sioux Falls Brewing Company, a corporation existing and doing business under and by virtue of the law of Dakota Territory, at Sioux Falls, aforesaid; provided, and it is hereby expressly agreed by and between the parties hereto that time is the essence of this contract and that the title to the aforesaid property shall not pass absolutely until full payment for the same, and in case the party of the second part shall fail to make any of the payments hereinafter set forth to be made by said party of the second part within thirty days of the time stipulated and agreed upon, then the sale aforesaid shall be null and void and of no effect and the payment then made by the party of the second part shall be treated as liquidated damages for the non-fulfillment of the contract on the part of the party of the second part.

And the party of the second part, in consideration of the sale and transfer of the property as above set forth by said party of the first part, hereby agrees to pay said party of the first part, as follows: At the time of signing this agreement, $2,000; March 3, 1886, $2,000; April 3, 1886, $1,000; June 3, 1886, $1,500; July 3, 1886, $2,500.

It is hereby expressly agreed by the parties hereto that upon the execution of this agreement and the payment of $2,000 as hereinbefore set forth the said party of the first part will assign, transfer, or cause to be assigned, transferred and set over to the said party .

of the second part by good, valid and legal assignment three hun-. dred and twenty-five shares of the capital stock of the Sioux Falls Brewing Company.

And the party of the second part hereby agrees to purchase all of the real estate, and does hereby purchase all of said real estate and all appurtenances thereto now belonging to the Sioux Falls Brewing Company aforesaid, and hereby promises and agrees to pay said party of the first part the sum of $20,000 within eighteen months from this date.

And the party of the first part hereby covenants, promises and agrees that they will, and do hereby sell to the said party of the second part all the real estate and the appurtenances thereto belonging, that is now owned by said Sioux Falls Brewing Company for the sum of $20,000 ; and covenants, promises and agrees that it will, at any time after the foreclosure, and within eighteen months from the date of this agreement upon demand of the party of the second part, make, execute and deliver to the said party of. the second part, a good and valid assignment of all its indebtedness and evidences of indebtedness which the said party of the first part had against the Sioux Falls Brewing Company aforesaid on the 18th day of February, 1886, or now has at the time of the execution of this agreement, or may accrue to the said party of the first part, or come into the possession of the said party of the first part, resulting from the now existing indebtedness from the Sioux Falls Brewing Company aforesaid to the party of the first part; meaning hereby to sell and assign all the indebtedness of the Sioux Falls Brewing Company to said party of the second part, and also meaning to hereby agree to assign the same, and the evidences thereof to the said party of the second part, his heirs and assigns at any time within eighteen months from this date upon demand, and the payment of $20,000 to the said party of the first part by said party of the second part.

And the said party of the first part as part consideration of the covenants, agreements, and promises, made and entered into herein by and on behalf of the party of the second part, hereby promises and agrees that it will, as soon as mature, proceed to foreclose (without expense to the said party of the second part) that valid and subsisting mortgage of $20,000 to W. F. Furbeck, now speci-

fied, and also all mortgages it now holds against the Sioux Falls Brewing Company, and prosecute said foreclosure to a speedy conclusion, and upon demand of the said party of the second part, at any time after the foreclosure of, and within eighteen months from this date, and the payment to the said party of the first part the sum of $20,000, hereby covenants, promises and agrees, that it will cause to be executed and delivered to the said party of the second part, his heirs and assigns a good and valid sheriff's deed of all the real estate and the appurtenances thereto belonging as above described; and also covenants and agrees that it will, in addition to the promises and agreements above set forth, to be done and performed by said party of the first part, make, execute and deliver to said party of the second part a good and valid quit-claim deed, to the aforesaid premises upon demand, provided the said party of the second part has paid said sum of $20,000 as aforesaid, or will pay the same upon the execution and delivery of said deed.

And the said party of the first part hereby promises and agrees to save said party of the second part, his heirs or assigns from all costs and expense of every name and nature owing to any indebtedness that may exist at the present time on the part of the Sioux Falls Brewing Company aforesaid to any person or persons, firm, company, or corporation whatever.

In witness whereof, the said party of the first part, and the said party of the second part have hereunto subscribed their names and affixed their seals in duplicate the day and year first above written. The First National Bank, by R. J. Wells, President; W. F. Furbeck, Cashier; Moriz Levinger.

Upon this contract the defendant Levinger also interposed a cross-complaint against the bank, its receiver, the brewing company and the plaintiff, asking substantially the same relief as in the answer. The only additional facts disclosed by the cross-complaint were, that the bank at the execution of the contract was the holder of three hundred and twenty-five shares of the four hundred shares of the capital stock of the brewing company; that the defendant was a stockholder in the bank; that the $20,000 mortgage referred to in the contract is the one sought to be foreclosed in this action, and that the bank by Furbeck, its cashier, and the payee of the mortgage, executed to the defendant

on the 17th day of February, 1886, a title bond for the conveyance of the real estate of the brewing company.

The receiver demurred to the cross-complaint on the ground it did not state facts sufficient to constitute a cause of action against him.

The plaintiff demurred to the fourth part of the answer on the ground that it did not state facts sufficient to constitute a defense or counter-claim, and to the cross-complaint on the ground that it did not state facts sufficient to constitute a cross-complaint against him. These demurrers were sustained and the defendant appealed.

*Bailey & Davis* and *H. H. Keith*, for appellant.

The respondents are not in a position to question the validity of the contract.

Its illegality is based on the claim that it would prevent rivalry at foreclosure sales. This would be a forced construction. It should be construed so as to uphold rather than destroy it. 2 Pars. Cont. 503; Bish. Cont., §§ 380, 383, 391, 397; C. C., §§ 938, 939; Marie v. Garrison, 83 N. Y. 14; Whitmore v. Porter, 92 id. 77; Greenh. Pub. Pol. 27.

The contract was divisible, and there being no possible taint as to the part relating to the personalty it ought to have been upheld. Bish. Cont. 487; 2 Pars. 505.

It was not a fraud upon the stockholders or creditors, nor would it have had the effect to dissolve the corporation.

Even if the contract were void the bank could not retain the money it had received under it without liability to account to the defendant. McBlair v. Gibbs, 17 How. 237; Brooks v. Martin, 2 Wall. 70; Wann v. Kelley, 5 Fed. Rep. 584; Cook v. Sherman, 20 id. 167; Tenant v. Elliot, 1 B. B. P. 3. Under these authorities the defendant could have maintained an action against the bank for the money it had received, and he being interested in the brewery, as shown by the contract and title bond, has the right to use it in reduction of the mortgage debt.

*Coughran & McMartin* and *Gamble Bros.*, for Thompson, receiver.

1. The contract under which Levinger claims is void on the

grounds of public policy, for the reason that its natural tendency is to restrict and diminish competition at a public sale. Greenh. Pub. Pol. 178, 183, 184, 185, 189; Wight v. Rindskopf, 43 Wis. 348; Gardner v. Morse, 25 Me. 140; Morrow v. Darling, 47 Vt. 67; Brisbane v. Adams, 3 N. Y. 129; Vantress v. Hyatt, 5 Ind. 487; Bants v. Cole, 7 Black, 265; Cocks v. Izard, 7 Wall. 559; Slater v. Maxwell, 6 id. 268; Gibbs v. Smith, 115 Mass. 592; Gardner v. Morse, 25 Me. 140; Durfree v. Moran, 57 Mo. 374; Webster v. French, 11 Ill. 254; Morris v. Woodward, 25 N. J. Eq. 32; Hawley v. Cramer, 4 Cow. 717; Jackson v. Ludeling, 16 How. 616; Jones v. Caswell, 3 Johns. Cas. 29; Thompson v. Davis, 13 Johns. 112; Doolin v. Ward, 6 id. 194; Brackett v. Wyman, 48 N. Y. 667; Wilber v. Howe, 8 Johns. 444; Perkins v. Savage, 15 Wend. 412; Packard v. Bird, 40 Cal. 383; Atcheson v. Mallon, 43 N. Y. 147; Munson v. Syracuse, G. & C. R. W. Co., 29 Hun, 76; Howell v. Mills, 53 N. Y. 322; Bliss v. Matteson, 45 id. 22.

2. It shows a conspiracy to defraud the brewing company and the stockholders from its right to have a free unrestricted competition of a sale of its property under the mortgage if any should be necessary.

3. It shows a conspiracy to defraud stockholders not in any manner interested with the bank, and thereby the deprivation of the property rights of others. Smith v. Harrison, 27 L. T. (N. S.) 188, 20 W. R. 594; Greenh. 209; Guernsey v. Cook, 120 Mass. 501; Western U. T. Co. v. Union P. R. R. Co., 1 McCrary, 418; Fuller v. Dame, 18 Pick. 422; Case v. Gerrish, 15 id. 49; Cook v. Sherman, 4 McCrary, 20.

4. It shows a conspiracy to create a default in a valid and subsisting mortgage not then defaulted, and controlling the action of the brewing company.

5. It is a contract by which a part of the shareholders are to be deprived of their rights in common with other shareholders in the property and franchise of the corporation.

6. It is a contract which is intended to operate as a clog upon the equity of redemption of a mortgage by a conspiracy to prevent redemptions foreign to and unknown to the original mortgage contract. Greenh. 198; Story Eq. Pl. 389.

7. It is a contract for disposing of property belonging to a stranger to the contract.

8. The contract calls for a disposition of property by the law contrary to its express demands.

9. The pleading is contradictory, inartificial and unknown to our practice.

10. The contract is entire and impossible of performance. Stevens v. Coon, 1 Pinn. 356.

11. One of the parties to the contract is a national bank, and is not authorized to deal in property or to acquire it in the manner specified, and cannot deal with the property of third parties as the contract requires.

12. It provides that the bank, the holder (not owner) of a large majority (more than three-fourths) of the stock, shall immediately put the other party to the contract in the same position without consideration except the sale of the property of the brewing company to him without pretense of any interest whatever in the property except the mortgage.

13. It is a contract to avoid one or the other of antagonistic legal obligations.

The defendant is entitled to no relief. The contract being void no subsequent acts of the parties under it would have the effect of ratifying or confirming it, or estopping either party from asserting its invalidity. Wheeler v. Wheeler, 5 Lans. 355.

The law will neither aid in enforcing it nor in restoring what has been lost under it. Greenh. 6, 7, 8; Cook v. Sherman, 4 McCrary, 20; W. U. T. Co. v. U. P. R. R. Co., 1 id. 418; Snyder v. Welby, 33 Mich. 483; Sharp v. Wright, 36 Barb. 236; Perkins v. Savage, 15 Wend. 412; Oscanyan v. Arms Co., 103 U. S. 261; Marshall v. R. R. Co., 17 How. 317; Wight v. Rindskop, 43 Wis. 348; Evans v. City, 24 N. J. L. 771; Crawford v. Wick, 18 Ohio St. 206.

The contract is not divisible, one consideration runs through the whole; it is a contract for all of the property. Morris v. Harris, 15 Cal. 257. Suppose an attempt be made to divide it where suggested, the first would be void for the want of a sale, the second would be void because of illegality. C. C., § 904. Defendant could maintain no action for the money paid without

the aid of the illegal contract, he is, therefore, not entitled to recoup the payments made.   Higgins v. McCrea, 116 U. S. 671; Armstrong v. Toler, 11 Wheat. 258; Brown v. Tarkington, 3 Wall. 377; Davidson v. Lander, 4 id. 447; Hanauer v. Doane, 12 id. 342; Hall v. Coppell, 7 id. 542.

If the defendant has any claim against the bank he can only pursue the method pointed out by the national bank act. R. S., § 5235; Kennedy v. Gibson, 8 Wall. 498; Bank v. Bank, 14 id. 383; Western U. R. R. Co. v. U. S., 101 U. S. 543; White v. Knox, 111 id. 784.

In any event he has no claim he can use by way of recoupment or set-off as against the bank.  He shows no connection with the brewing company.   There is no mutuality between him and the plaintiff.   Scammon v. Kimball, 92 U. S. 36; Libby v. Hopkins, 104 id. 303; Cook C. N. B. v. U. S., 107 id. 445; Venango N. B. v. Taylor, 56 Pa. St. 14; Balch v. Wilson, 25 Minn. 299.

*Boyce & Boyce*, for respondent Peck.

By the COURT:

The contract relied upon by the defense was against public policy, and will not be enforced by specific performance nor allowed to be declared upon by way of recoupment.

Nor is the contract sufficiently definite and specific, in terms, to be enforced, and the judgment must be affirmed.   All the justices concur.

REPORTER: — At the May Term, 1888, a rehearing was granted as to the right of the appellant to recover the money paid under the contract set up in the cross-complaint.   After the rehearing the following conclusion was announced at that term:

By the COURT:

This case is affirmed, the court being of opinion that the contract set out in the pleadings is contrary to public policy and one which a court of equity will not lend its aid to enforce by specific performance; nor will it permit the defendant in such case, and under this form of action, in which he alleges the validity of, and relies for recovery upon, the contract itself, to recoup the consideration paid in part performance thereof.   All the justices concur.